IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | )<br>) Civil No. 3:24-CV-00045 |
| APPROXIMATELY $42,181 IN UNITED STATES CURRENCY SEIZED FROM LEVERNE DOUGLAS ON SEPTEMBER 20, 2023, AT THE CHARLOTTE-DOUGLAS INTERNATIONAL AIRPORT | )<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

NOW COMES the United States of America, Plaintiff herein, by and through Dena J. King, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

**INTRODUCTION**

1. This is a civil action *in rem* against approximately $42,181.00 in United States Currency seized from Leverne Douglas ("Douglas") on September 20, 2023, at the Charlotte-Douglas International Airport (the "Currency").

2. Douglas is a convicted drug trafficker and armed robber who law enforcement encountered at the CLT airport after a drug detection K9 alerted to Douglas's check suitcase, which contained, *inter alia*, the Currency hidden among clothes, a vacuum sealer, packing materials, and shipping/FedEx boxes. Douglas, whose ticket was purchased the day before by someone else (purportedly his "sister") gave a changing and incoherent story as to why he was travelling to California to give the $42,181 to another "sister," who Douglas later admitted was not his biological sister and whose phone number was listed as an unnamed contact.

3. A simpler, and more plausible explanation for Douglas's travel to California with

1

the items in his checked suitcase exists: he was serving as a drug courier, taking the Currency out to California to buy narcotics, where he would then vacuum seal, pack, and ship back the drugs in the FedEx boxes. Indeed, a drug detection K9 later alerted to the odor of narcotics on Douglas's vacuum sealer when it was placed in a blind lineup.

4. Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

**NATURE OF THE ACTION**

5. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

6. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

7. Venue is proper pursuant to 28 U.S.C. § 1395 because the Currency was seized in the Western District of North Carolina.

8. The Currency has been seized and is now within the Western District of North Carolina.

9. Based on the following facts, verified by Department of Homeland Security,

Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Stephen Brown, this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

*The Currency's seizure and law enforcement's investigation*

10. On September 20, 2023, during an interdiction operation at the Charlotte airport, K9 Benny, a properly trained and certified drug detection canine, alerted to the odor of narcotics on/from a checked suitcase prior to being loaded on American Airlines flight 1969 to Los Angeles, California, a known drug source location.

11. The suitcase's luggage tag indicated it belonged to Leverne Douglas.

12. Law enforcement located Douglas in the boarding area prior to the flight's departure, and TFO Brown asked to speak with him.

13. Douglas agreed, and the law enforcement team and Douglas moved to a more private area of the concourse a short distance away.

14. When asked when he purchased his plane ticket, Douglas stated that his "sister-in-law" purchased his plane ticket the day before.

15. Douglas was informed of the K9 alert, and Douglas noted he had just gotten back from Jamacia with the same suitcase.

16. TFO Brown asked Douglas what was in the suitcase, to which Douglas replied the box contained packing materials, boxes, and his "cash money." When asked how much cash was in the suitcase, Douglas stated $20,000.

17. Douglas granted consent to search his suitcase. The search ultimately revealed the Currency hidden among clothes, as well as a vacuum sealer, packing tape, and folded cardboard shipping/FedEx boxes:



18. TFO Brown observed a vacuum sealer when the suitcase was opened, which Douglas stated was for "packaging."

19. While TFO Jacobs searched the suitcase, TFO Brown continued to speak with Douglas.

20. When asked what the money was going to be used for, Douglas stated it was for "his sister," who was "moving back," but Douglas was just going to give her the money and go on vacation.

21. When asked what he does for work, Douglas claimed he owned a nightclub, worked as a bail bondsman, and had rental properties in South Carolina.

22. TFO Brown asked Douglas if the cash in the suitcase was exactly $20,000, to which Douglas replied it was actually "40," then stated one stack of the cash was $15,000 and the other $20,000.

23. When asked where the money came from and if it came from a bank, Douglas just replied that he owned a nightclub and rental properties.

24. Douglas stated he banked at First National, but did not show TFO Brown any cash withdrawals that would explain the Currency, only later showing TFO Brown a balance of approximately $1,500.00.

25. Douglas told TFO Brown he was planning on coming back from California in two days. When questioned about taking such a short vacation to the west coast, Douglas then changed his story and said that he was not going on vacation, but rather, he had been on vacation, his sister called him, told him she was in trouble and needed to "get out of California."

26. When asked what kind of trouble she was in, Douglas responded, "boyfriend I guess . . . I don't … its complicated…"

27. Douglas then stated his "sister's" name was Melissa Pearson but that she was not his biological sister.

28. TFO Brown and Douglas discussed Douglas's purported income and taxes, however, Douglas could not state or estimate how much he claimed in income the prior year.

29. At this time, TFO Brown explained to Douglas that his cash would be seized and the process for filing a claim. TFO Brown explained the vacuum sealer, rolls of vacuum seal plastic, a roll of clear packing tape, scissors, and six cardboard boxes would be seized as drug packaging paraphernalia (pursuant to North Carolina General Statute 90-113.22).

30. During the discussion, TFO Brown told Douglas he could still fly to California when Douglas asked what to do about his flight, and that Douglas still had the $1,500 in his bank account for the two-day trip that could be withdrawn from any ATM.

31. Douglas replied that "$1,500 ain't gonna be enough to do what I gotta do." When asked what he was going to buy with $40,000 in two days, Douglas couldn't provide an answer.

32. The discussion continued and TFO Brown asked if he could get his sister's number to verify that Douglas was coming out there. TFO Brown observed the number was not in Melissa Pearson's name, and the blank contact information in Douglas's phone for his purported sister was unusual for a close contact:



33. TFO Brown asked Douglas if this was his first trip to LAX, and Douglas replied, no, he had been maybe six to seven times in the last year, but those trips were not to see his "sister."

34. Douglas stated he often travelled with currency, and had just taken $14,000 to Jamacia, and had previously shipped things such as "books and clothing" via FedEx from California.

35. The encounter ended amicably, with Douglas telling TFO Brown "it's not a big deal, like I said, you already have all the information, you did a good job man . . ."

36. After the seizure, a second properly trained and certified drug detection canine, K9 Cali, alerted to the odor of narcotics from the Currency after being deployed on a blind lineup of five plastic boxes, of which one contained the Currency.

37. Further, the vacuum sealer was placed in a second blind lineup of five plastic boxes and presented to K9 Cali. K9 Cali only alerted to the package containing the vacuum sealer—indicating that the vacuum sealer was likely used to package narcotics.

38. The Currency was transported to Loomis for counting, and totaled $42,181, in denominations of one $1 bill, two $5 bills, one $10 bill, one hundred and thirty eight $20 bills, two hundred and thirty $50 bills, and two hundred and seventy nine $100 bills—a composition that, along with the Currency's packaging in rubber-banded quick count bundles, is consistent with the proceeds of, or money involved in, currency involved in narcotics trafficking and/or the proceeds of street level narcotics sales.

39. Additionally, a search of Douglas' criminal history found that he was convicted in 1994 of four counts of Distribution of Crack Cocaine and in 1995 he was convicted of Robbery with a Dangerous Weapon.

**FIRST CLAIM FOR RELIEF – THE $42,181.00 IN CURRENCY**
**(21 U.S.C § 881(a)(6))**

40. The United States incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

41. The $42,181.00 in Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

## CONCLUSION AND PRAYER FOR RELIEF

42. By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the Currency be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the Currency to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 12th day of January, 2024.

DENA J. KING
UNITED STATES ATTORNEY

/s/ Seth Johnson
J. Seth Johnson
Texas Bar No. 24083259
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 338-3159

Email: seth.johnson@usdoj.gov

# **VERIFICATION**

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 12th day of January, 2024.

/s/ Stephen G. Brown
TFO Stephen G. Brown
Department of Homeland Security,
Homeland Security Investigations